IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| MARK ANTHONY BECKFORD, | |
| Petitioner, | CIVIL ACTION NO.: 2:22-cv-27 |
| v. | |
| WARDEN, FCI JESUP, | |
| Respondent. | |

### REPORT AND RECOMMENDATION

Petitioner Mark Beckford ("Beckford"), who is currently incarcerated at the Federal Correctional Institution in Jesup, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus. Doc. 1. Respondent filed a Motion to Dismiss, and Beckford filed a Response. Docs. 10, 12. For the following reasons, I **RECOMMEND** the Court **GRANT** Respondent's Motion and **DENY** Beckford's Petition. I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Beckford leave to appeal *in forma pauperis*.

### BACKGROUND

Beckford was convicted in the Northern District of Georgia of conspiracy to possess with intent to distribute cocaine hydrochloride and marijuana, in violation of 21 U.S.C. § 846; attempt to possess with intent to distribute cocaine hydrochloride and marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b) and 18 U.S.C. § 2; possession of a firearm during a controlled substance offense, in violation of 18 U.S.C. § 924(c)(1); possession of a firearm with an altered serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1); and possession of an

unregistered machine gun, in violation of 26 U.S.C. §§ 5841, 5845(b), and 5861(d). Doc. 10-2 at 2. He was sentenced to 438 months' imprisonment, which was later reduced to 240 months, and has a projected release date of May 20, 2026, via good conduct release. Id. at 4; Doc. 10-1 at 6–7.

## DISCUSSION

In his Petition, Beckford contests the Bureau of Prisons' ("BOP") decision to assign him a "greatest severity" public safety factor ("PSF").[1] Doc. 1 at 1. Beckford states his case is "materially indistinguishable" from another inmate's case and the other inmate is characterized as "out" custody (at the Camp), while Beckford is characterized as "in" custody (at the Low). Id. Beckford maintains he has made several attempts to have the BOP correct these errors and the BOP's computations indicate he should be placed on "out" custody. Id. Beckford states he has been denied CARES Act placement because of these errors.[2] In addition, Beckford notes one of his co-defendants had his PSF waived and was re-scored to moderate severity and, as a result, is being housed at a BOP camp. Id. According to Beckford, he is being treated differently based on his national origin and race. Id. at 3. Beckford wants the BOP to update his pre-sentence investigation report ("PSR"). Id. at 5.

Respondent argues challenges to a PSF cannot be brought under § 2241. Doc. 10 at 2. Respondent notes, even if the BOP changed Beckford's PSF to decrease his security level, such a designation would have no effect on Beckford's release date. Id. at 5. Respondent also notes the BOP has been granted discretion to designate inmates' places of confinement. Id. at 6. In

---

[1] The BOP defines a PSF as "relevant factual information regarding the inmate's current offense, sentence, criminal history, or institutional behavior that requires additional security measures be employed to ensure the safety and protection of the public." BOP Program Statement 5100.08, ch. 5, p. 7.

[2] Coronavirus Aid, Relief, and Economic Safety ("CARES") Act.

2

addition, Respondent states Beckford fails to set forth a viable equal protection claim, as Beckford's criminal history and criminal conduct are more extensive than those of the alleged comparator.  Id. at 8.  Finally, Respondent states, to the extent Beckford's PSR contains an error, he should ask the sentencing court for any modification or correction, not this Court via § 2241.  Id. at 9–10.

In his Response, Beckford asserts he can proceed with his equal protection claim under § 2241 and he and the comparator inmate are similarly situated, other than their races.  Doc. 12 at 1–3.  In addition, Beckford states he would like the BOP to update its copy of his PSR to strike reference to a machine gun so his unequal treatment can be resolved.  Id. at 4.

**I.    Whether Beckford Can Proceed Under § 2241**

Respondent contends Beckford's claim concerning the application of the "greatest severity" PSF to his custody classification cannot form the basis of his § 2241 Petition because Beckford's claim does not relate to the execution of his sentence.  Doc. 10 at 2–3.  Respondent emphasizes, even if Beckford succeeded in having his PSF lowered, it would have no effect on his release date and would not shorten his sentence.  Id. at 3.  Respondent states removing Beckford's PSF so he could qualify for home confinement does not impact the fact or duration of his confinement, only the location for service of his incarceration.  Id. at 5.

The Court acknowledges there is no consensus among the Circuits or within this District on whether a prisoner can proceed with a challenge to a PSF through a § 2241.  In Caba v. United States, this Court determined a petitioner's allegations concerning his security classification—specifically, the BOP's "imposition of a PSF of 'Alien'"—was a challenge to the conditions of the petitioner's confinement and were not cognizable in a § 2241 petition.  No. CV310-82, 2010 WL 5437269, at *2 (S.D. Ga. Nov. 30, 2010), *report and recommendation*

*adopted*, 2010 WL 5441919 (S.D. Ga. Dec. 27, 2010); see also Sampson v. Flournoy, Civil Action No.: 2:17-cv-109, 2018 WL 3245070, at *2 (finding PSF of greatest severity could not be challenged through § 2241 because petitioner not seeking release and noting this Court's and other courts' changes in positions); but see Herrera v. Johns, Civil Action No. CV 513-031, 2013 WL 5574455, at *1 n.1 (S.D. Ga. Oct. 8, 2013) (finding a petitioner can challenge security classification or place of confinement via § 2241); Baranwal v. Stone, CV314-098, 2015 WL 171410, at *2 (S.D. Ga. Jan. 13, 2015) (same). The Court also notes the distinction between a § 2241 and a civil rights action "becomes 'blurry' when an inmate challenges an unconstitutional condition of confinement or prison procedure that affects the timing of his release from custody." Pham v. Wagner, No. 5:14-CV-67, 2016 WL 5852553, at *2 (S.D. Miss. Oct. 6, 2016) (citing Carson v. Johnson, 112 F.3d 818, 820–21 (5th Cir. 1997)).

As a result, the Fifth Circuit Court of Appeals has "'adopted a simple, bright-line rule for resolving such questions.' If a favorable determination of an inmate's claims would not automatically entitle the inmate to accelerated release, the proper vehicle is a civil rights suit." Id. (quoting Carson, 112 F.3d at 820–21); see also Boyce v. Ashcroft, 251 F.3d 911, 914 (10th Cir. 2001) ("Prisoners who raise constitutional challenges to other prison decisions—including transfers to administrative segregation, exclusion from prison programs, or suspension of privileges, e.g., conditions of confinement, must proceed" with a civil rights lawsuit.). If a petitioner is not seeking immediate or early release from custody and is instead seeking to have his PSF removed so he will be eligible for programs which could reduce his sentence or the place he serves his sentence, he has not alleged a favorable determination would automatically entitle him to a speedier release from custody. Thus, the proper vehicle for raising his claims would be a civil rights suit. See Boyce, 251 F.3d at 914 "Prisoners who raise constitutional challenges to

4

other prison decisions—including transfers to administrative segregation, exclusion from prison programs, or suspension of privileges, e.g., conditions of confinement, must proceed" with a civil rights lawsuit.); Hribick v. Warden Fort Dix FCI, 695 F. App'x 25 (3d Cir. 2017) (affirming dismissal of habeas claim regarding "greatest severity" PSF, which petitioner claimed prevented him from transferring to a prison camp, because the claim was not cognizable under § 2241, as it was not a challenge to the fact or duration on his imprisonment); Pawlick v. Maiorana, 687 F. App'x 421, 422 (5th Cir. 2017) (affirming district court's dismissal of § 2241 petition by which petitioner sought to challenge his PSF based on allegedly erroneous statements in his PSR); Guidry v. Warden FCI Talladega, Case No. 1:18-cv-941, 2020 WL 1237961, at *2 (N.D. Ala. Feb. 4, 2020) ("Put simply, the petitioner's challenge to his classification [of greatest severity] fails to raise a claim cognizable in a § 2241 petition."), *report and recommendation adopted*, 2020 WL 1235724 (N.D. Ala. Mar. 12, 2020).

In light of this conflicting authority, and absent any on-point controlling authority, I conclude most PSF challenges cannot be raised in a § 2241 petition because a favorable ruling will have no impact on the fact or duration of the challenger's incarceration. In most instances, a "bright-line rule," like the one the Fifth Circuit has adopted, will resolve the issue. However, some PSF challenges may be cognizable in a § 2241 petition, depending on the nature of the challenge and the consequences of a favorable ruling.

In Beckford's PSF challenge, he argues errors with his PSF and PSR have resulted in his inability to be released to home confinement.³ In other words, Beckford contends if he is

---

³  The Court notes Respondent's mention of Beckford's failure to exhaust his administrative remedies on this particular issue. Doc. 10 at 5 n.3. The Court will not analyze this since the record is not fully developed. See Shivers v. United States, 1 F.4th 924, 935 (11th Cir. 2021) (A court "may consider facts outside the pleadings 'so long as . . . the parties have sufficient opportunity to develop the record.'" (quoting Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008))).

5

successful on his PSF challenge, he would be released from traditional incarceration to home confinement. Courts have not been uniform in determining whether such a challenge can proceed by way of a § 2241 petition. Compare Melot v. Bergami, 970 F.3d 596, 599 (5th Cir. 2020) (concluding a challenge that would result in a move from traditional incarceration to home confinement would not be cognizable in habeas) with Cheek v. Warden of Fed. Med. Ctr., 835 F. App'x 737, 739 (5th Cir. 2020) ("Cheek's request for release to home confinement in the context of a global pandemic was properly brought as an application for a writ of habeas corpus under Section 2241 because a favorable ruling from the district court would accelerate his release."); see also Touzier v. U.S. Atty. Gen., No. 21-10761, 2021 WL 3829618 (11th Cir. Aug. 27, 2021) (noting trial court determined a request to be re-released on home confinement cognizable under § 2241 and affirming denial of petition for other reasons); United States v. Saldana, 273 F. App'x 845, 846 (11th Cir. 2008) (noting district court should have construed challenges to place of confinement as § 2241 petitions, though not as a challenge to a PSF); Hribick, 695 F. App'x at 26 (concluding a PSF challenge seeking transfer from an ordinary penal institution to a prison camp is not cognizable in a § 2241 petition because it is akin to a "garden variety" prison transfer claim but noting a challenge seeking transfer to a community corrections center ("CCC") is cognizable because such a claim detention at a CCC is "very different" from detention at any ordinary penal institution). The more convincing line of authority supports treating PSF challenges seeking release to home confinement as cognizable in a § 2241 petition. This conclusion is bolstered by the Eleventh Circuit's opinion in Saldana.

Thus, it appears Beckford's PSF challenge is cognizable in a § 2241 petition, given that he seeks release to home confinement, which would impact the fact or duration of his detention. However, the Court need not resolve this issue because—even assuming for the sake of

argument the claims are properly asserted in a § 2241 petition—Beckford's claims are subject to dismissal for other reasons, which the Court now addresses.

II.     **The BOP Has Full Discretion to Assign Petitioner's PSF, and the Court Is Precluded From Reviewing That Determination**

Respondent alleges the BOP's classification decisions, such as PSF assignment, are within the BOP's discretion.  Doc. 10 at 6.  Congress gave the BOP full discretion for the classification and housing of its inmates, and the BOP is to consider the nature of the offenses committed and any statement from the court imposing the sentence, among other factors. 18 U.S.C. §§ 3621(b), 4081.  "[T]he placement and classification of inmates inside a prison 'is a matter [sic] peculiarly within the province of prison authorities' administrative duties.'"  Jolly v. Van Peavy, No. 5:12-CV-241, 2012 WL 4829269, at *3 (M.D. Ga. Aug. 30, 2012), *report and recommendation adopted*, 2012 WL 4829515 (M.D. Ga. Oct. 10, 2012) (quoting Freeman v. Fuller, 623 F. Supp. 1224, 1227 (S.D. Fla. 1985)); Young v. Wainwright, 449 F.2d 338, 339 (5th Cir. 1971) ("Classification of inmates is a matter of prison administration and management with which federal courts are reluctant to interfere except in extreme circumstances.").

In carrying out this discretion, the BOP uses a system of public safety factors as an aid to determine the level of security necessary for a particular inmate in order to insure the public's protection.  BOP Program Statement 5100.08, ch. 5, pp. 8–11.  Staff are to look at "the Statement of Reasons (attached to the Judgment) and ensure the information provided is appropriately used in classifying the inmate." Id. at ch. 6, p. 4.  An inmate who has a weapons offense involving the use of a weapon can be assigned a PSF of "greatest severity."  Id. at app. A, p. 1.  The severity of violence is determined by the offense behavior, regardless of the conviction or finding of guilt. Id. at ch. 4, p. 7.

7

Under the Administrative Procedure Act ("APA"), a petitioner may use habeas corpus to challenge a BOP action. See 5 U.S.C. § 703. However, in 18 U.S.C. § 3625, Congress specified the provisions of the APA governing judicial review, §§ 701–06, were inapplicable to "the making of any determination, decision, or order under" any provision of 18 U.S.C. §§ 3621 to 3626. The Eleventh Circuit Court of Appeals has explained § 3625 expressly precludes judicial review agency adjudicative decisions but not rulemaking decisions. Cook v. Wiley, 208 F.3d 1314, 1319 (11th Cir. 2000); see also Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011) ("To find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge BOP's discretionary determinations made pursuant to [Title 18, Chapter 229, Subchapter C] would be inconsistent with the language of 18 U.S.C. § 3625."); Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998) ("[I]t is apparent that § 3625 precludes judicial review of agency adjudicative decisions but not of rulemaking decisions."). Where Congress precludes judicial review of an agency decision by statute, judicial review of that decision is limited to whether the agency acted outside its statutory limits or violated the Constitution. See Webster v. Doe, 486 U.S. 592, 597, 603 (1988); Santiago-Lebron v. Fla. Parole Comm'n, 767 F. Supp. 2d 1340, 1351 (S.D. Fla. 2011); Paradis v. Keller, 2011 WL 2790480, *4 n.3 (N.D. Ga. June 13, 2011); Klatch v. Rathman, No. 1:13-CV-01452, 2014 WL 537021, at *11 (N.D. Ala. Feb. 10, 2014); see also Rodriguez v. Johns, Civil Action No. 5:17-cv-134, 2018 WL 4102854, at *2–3 (S.D. Ga. July 26, 2018), *report and recommendation adopted*, 2018 WL 4100695 (S.D. Ga. Aug. 28, 2018).

The BOP's determination regarding Beckford's PSF and potential placement in a camp or on home confinement under the CARES Act is an adjudicative, discretionary decision and falls squarely under the purview of § 3625. "And that decision is not subject to judicial review." Cook, 208 F.3d at 1319; 18 U.S.C. § 3621(b) ("The [BOP] shall designate the place of the

8

prisoner's imprisonment . . . and security designation . . . ."); 18 U.S.C. § 3624(c)(1), (2) (The BOP has authority to allow placement in anticipation of re-entry and may also place a prisoner on home confinement.); United States v. Ramdeo, 705 F. App'x 839, 840 (11th Cir. 2017) ("[T]he BOP is afforded wide discretion in classifying and housing prisoners, and our review of those decisions is limited."); see also Touizer, 2021 WL 3829618, at *2 ("Neither § 3624(c)(2) nor the CARES Act expressly provide the judiciary with authority to grant an inmate home confinement in" circumstances where a petitioner violated the terms of home confinement and had that placement revoked. (citing § 3624(c)(2); CARES Act, § 12003(b)(2)), and continuing, "Indeed, the BOP alone 'shall designate the place of the prisoner's imprisonment,' and such 'a designation of a place of imprisonment . . . is not reviewable by any court.'") quoting § 3621(b); 3624(c)(4) (stating "nothing in this statute 'shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.'")). Even construing his claims liberally, Beckford does not show the BOP acted outside of its statutory authority or violated the Constitution.[4]

Consequently, § 3625 entirely precludes this Court's review of the BOP's challenged determination of Beckford's PSF and alleged non-placement in a camp or on home confinement. Additionally, where a challenge concerns a BOP Program Statement, courts give the BOP "some deference" when determining whether the Program Statement is a reasonable implementation of the BOP's relevant statutory authority. Cook, 208 F.3d at 1319–20; Santiago-Lebron, 767 F. Supp. 2d at 1352–53; Barr v. United States, No. 4:16cv108, 2016 WL 6841691, at *4 (N.D. Fla. Oct. 28, 2016), *report and recommendation adopted*, 2016 WL 6832635 (N.D. Fla. Nov. 18,

---

[4] To the extent Beckford states the BOP violated his right to equal protection, the Court addresses this claim in the following Section.

9

2016).  Beckford fails to show the BOP's implementation of Program Statement 5100.08 is unreasonable.  Accordingly, the Court should **GRANT** Respondent's Motion to Dismiss and **DISMISS** Beckford's Petition for this reason.

### III.   Beckford's Constitutional Claim Fails

Beckford's assertion the BOP violated his constitutional rights by assigning the "greatest severity" PSF to him also fails.  Courts have determined a petitioner has no constitutional right to any specific custody classification.  Perez v. Fed. Bureau of Prisons, 229 F. App'x 55 (3d Cir. 2007); Guidry, 2020 WL 1237961, at *2; Sampson, 2018 WL 3245070, at *4 n.5 (citing cases).  In addition, Beckford fails to demonstrate the BOP discriminated against him, he is similarly situated with the alleged comparator, or any alleged discriminatory reason for his treatment is related to an unconstitutional reason.  Holmes v. Watts, 2:15-cv-155, 2016 WL 205401, at *4 (S.D. Ga. Jan. 15, 2016) ("A prisoner asserting an equal protection claim must demonstrate that he is similarly situated with other prisoners who received more favorable treatment and that his discriminatory treatment was based upon some constitutionally protected interest.").

Beckford claims he is similarly situated to another inmate, Adam Tollison, but has been treated differently.  Beckford asserts his convictions are sufficiently similar to Tollison's convictions, such that their PSFs should be the same, but Tollison has been assigned a lower PSF and, as a result, Tollison is housed at BOP camp.  Beckford asserts he and Tollison have been treated differently because Beckford is Jamaican and has dual citizenship in the United States and Jamaica, and Tollison is white and has singular citizenship in the United States.

Beckford fails to show he and Tollison are similarly situated.  The record demonstrates Beckford's criminal history is more extensive than Tollison's history.  Docs. 10-2, 10-3, 10-4. Specifically, the record shows Beckford was convicted on more counts, involving different

10

controlled substances and different types of firearms, compared to Tollison. Among the differences, Beckford was convicted for an offense involving an automatic weapon, but Tollison was not.[5] These are material differences bearing on the PSF determination. Moreover, Beckford fails to point anything in the record indicating the BOP has treated him in a disparate manner based on an unconstitutional basis, such as race. Thus, the Court should **GRANT** this portion of Respondent's Motion and **DENY** Beckford's claim.

While the Court declines to address the remaining portions of Beckford's Petition or Respondent's Motion, it does acknowledge Beckford should seek relief with the sentencing court, to the extent he wishes for his PSR to be updated or modified. This comment, however, is no indication of the relative merits of such a request.

## IV.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Beckford leave to appeal *in forma pauperis*. Though Beckford has not yet filed a notice of appeal, it would be appropriate to address that issue in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United

---

[5] Beckford insists the information in his PSR describing his offense conduct involving an automatic weapon should be removed based on the plea agreement. Any request by Beckford for a modification to the PSR should be asserted by a 28 U.S.C. § 2255 motion in the district where Beckford was convicted and sentenced. Pawlik v. Maiorana, 687 F. App'x 421, 422 (5th Cir. 2017) (affirming district court's dismissal of § 2241 petition in which petitioner sought to challenge his PSF based on allegedly erroneous statements in his PSR).

11

States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Beckford's filings and Respondent's Motion to Dismiss, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Beckford *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondent's Motion and **DENY** Beckford's Petition.  I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Beckford leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein. Objections not meeting the specificity requirement set out above will not be considered by the District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 15th day of February, 2023.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA